RAMEY, APPELLANT, *v.* METS, APPELLEE.

[Cite as Ramey v. Mets, 3 Ohio App. 2d 329.]

(No. 239—Decided June 22, 1964.)

*Mr. Nelson Lancione*, for appellant.
*Mr. Tom Renick* and *Mr. Allan Berger*, for appellee.

COLLIER, P. J. This action was instituted in the Common Pleas Court of Pickaway County by Garnet A. Ramey, appellant herein, against the defendants, Myron James Fuller and Lawrence Mets, to recover for personal injuries. The action arose as a result of a collision on April 18, 1960, when a garbage truck, owned by the defendant Mets, and being driven by the defendant Fuller, backed into a parked automobile, in which the plaintiff was sitting, on Ohio Street in the city of Circleville.

Plaintiff, at the close of her case, elected to proceed against the defendant Mets, and the defendant Fuller was dismissed as a party defendant. The parties will be referred to herein as they appeared in the trial court, with Garnet A. Ramey as the plaintiff and Lawrence Mets as the defendant. The trial resulted in a vertict for the defendant. The motions for a new trial and for judgment notwithstanding the verdict were overruled, and the plaintiff has perfected her appeal on questions of law to this court.

The first assignment of error is that the court erred in refusing to rule on plaintiff's motion, at the end of the opening statements, to remove the question of defendant's negligence from the consideration of the jury. The evidence shows that defendant's truck was parked on the north side of East Ohio Street, headed in a westerly direction; that, thereafter, an automobile being driven by plaintiff's husband and in which the plaintiff was riding parked behind defendant's truck; that plaintiff's husband left the automobile and went into a grocery store, leaving plaintiff and a small child in the parked car; and that the driver of defendant's truck started the motor and backed a distance of some six to twelve inches into the automobile in which the plaintiff was sitting.

The court reserved a ruling on plaintiff's motion but, at the

close of all the evidence, sustained the motion, and the jury was instructed accordingly. Such motions should always be considered with caution, especially at that stage of the trial. The court was required to interpret the opening statements most favorably to the defendant. 52 Ohio Jurisprudence 2d 678, Section 155. In view of the later ruling on plaintiff's motion, it is difficult to see how plaintiff could have been prejudiced. In our opinion, under the circumstances, the court was justified in reserving a decision on the motion. This assignment is overruled.

Under the second assignment of error, plaintiff claims the court should have declared a mistrial, as requested by plaintiff, for misconduct of counsel for defendant. The record discloses several such motions by counsel for plaintiff and more bickering between counsel than was proper. However, none of the acts complained of was of such character as to warrant the withdrawal of a juror and to declare a mistrial. This assignment is overruled.

For her third assignment of error the plaintiff claims the court erred in permitting Dr. Rothermich to testify when there had been no waiver of the physician-patient privilege. The record shows that Dr. Rothermich, who was called by the defendant, had treated the plaintiff for an arthritic condition in 1957. The plaintiff objected to the admission of the physician's testimony, which the plaintiff claimed was privileged under Section 2317.02, Revised Code. That statute provides:

"The following persons shall not testify in certain respects:

"(A) * * * a physician, concerning a communication made to him by his patient in that relation, or his advice to his patient, but the * * * physician may testify by express consent of the * * * patient, * * * and if the * * * patient voluntarily testifies, the * * * physician may be compelled to testify on the same subject;

"* * * * ."

In the case of *Baker* v. *Industrial Commission*, 135 Ohio St. 491, the Supreme Court held that where the plaintiff had voluntarily testified that his right leg was free from boils and scaley condition before the injury but that thereafter it was swollen, sore and scabby, there was a waiver of the privilege and the physician could testify on that subject. In the instant case, the plaintiff testified on direct examination as follows:

"Q. Mrs. Ramey, what was your physical condition just prior to the automobile accident? A. I had had arthritis but I had days when I was bad and I had days when I was good, I didn't have to take even aspirins for my pain and I was able to—I could do my own work, housework, and take care of my little daughter.

"Q. What about your right knee, to what extent did you have movement in your right knee before the automobile accident? A. I had movement in my knee, I had some arthritis, there was days it was a little painful and I would limp some on that knee or leg and there was other days there wasn't no pain and it didn't bother me much.

"Q. Before April 18, 1960, was there any activity required of you as a mother or as a house wife that you could not do because of your physical condition? A. No."

And, on redirect examination, plaintiff testified as follows:

"Q. Now, Mrs. Ramey on cross examination you were asked something about Dr. Rothermich and University Hospital. Frankly I lost some of it because of noises like we have been having, now, could you give us your best recollection just briefly Mrs. Ramey what Dr. Rothermich's instructions were so far as University Hospital is involved? A. He told me—he wanted me to go there for some observation if my arthritis become worse, I could go over and go in for observation and I felt that I wasn't that bad.

"Q. From that time until April 18, 1960, did you get bad enough to require you be hositalized? A. No."

The principal issue of fact to be determined by the jury was whether the plaintiff sustained an injury to her right knee as a direct and proximate result of defendant's negligence, as claimed by the plaintiff, or whether her condition was caused by arthritis, as contended by the defendant. Plaintiff voluntarily testified as to the condition of her right knee before the alleged injury, admitting a mild arthritic condition. Did this voluntary statement by the plaintiff on direct examination open the door to permit the testimony of the physician who had treated the plaintiff three years previously for this same disease? In the *Baker case*, where the facts are very similar, the Supreme Court, through Myers, J., in the opinion, said at page 494:

"* * * The *subject* was the sore and scabby condition of

his right leg concerning which he voluntarily testified in detail.

"If the patient testifies about one particular injury or disease, the physician may also testify on that one subject, but no other. * * *"(Emphasis added.)

The *subject*, in the instant case, was the disabled condition of plaintiff's right knee. Our conclusion is that the plaintiff having voluntarily testified as to the prior condition of her knee, the court did not err in the admission of the testimony of Dr. Rothermich.

Under assignment of error number four, plaintiff claims the court erred in its ruling on the admission and rejection of evidence. We have carefully considered all of plaintiff's claims and find no error of sufficient consequence to require a reversal. We do not consider any further comment necessary, and this assignment of error is overruled.

For her fifth assignment of error, plaintiff claims the court erred in its general charge to the jury in the following respects: 1. The removal of the issue of negligence from the jury; and 2. the charge on aggravation and acceleration of the pre-existing arthritis. In regard to the first complaint, the court, in the general charge, clearly removed the issue of negligence from the consideration of the jury in this language:

"You will not deliberate on the question of negligence but start your consideration with the direction that negligence of the defendant has been established."

In our discussion of the first assignment of error, we concluded the court properly reserved the ruling on plaintiff's motion to withdraw the question of defendant's negligence from consideration of the jury until the close of the evidence.

As to plaintiff's second contention, it was alleged in plaintiff's amended petition that plaintiff "sustained permanent injuries to her back, right hip and right knee, superimposed upon arthritis, activating and aggravating the arthritis throughout plaintiff's body and extremities."

At the close of plaintiff's case, on motion of the plaintiff, the allegation of activation and aggravation of the pre-existing arthritic condition was stricken from the amended petition to conform to the proof adduced by the plaintiff. In the general charge, the court instructed the jury fully and completely on this question of aggravation and acceleration of a pre-existing con-

dition. The plaintiff having abandoned this claim, and there being no medical proof to establish such claim, the court erred in giving such instructions. The charge should be directed to the facts in issue, which the evidence tends to establish or disprove. See *Boviard & Seyfang Mfg. Co.* v. *Maitland*, 92 Ohio St. 201.

However, in our opinion, the error committed in no way affected the substantial rights of the plaintiff. To warrant a reversal, an error must have been prejudical to the plaintiff. 4 Ohio Jurisprudence 2d 18, Section 829. The charge, as given, was favorable to the plaintiff and stated a ground of recovery which had not been supported by the evidence and which had been abandoned by the plaintiff. If the verdict had been rendered for the plaintiff, the defendant, unquestionably, could have based a proper claim of error for the injection of an issue not made by the pleadings or established by the proof. This assignment of error is overruled.

Assignment of error number six is that the verdict and judgment are against the manifest weight of the evidence. Suffice it to say that the evidence is in conflict as to whether the plaintiff sustained an injury in the collision as a direct and proximate result of defendant's negligence. It is a general rule that where a verdict is based upon conflicting inferences, reasonably deducible from the evidence, a reviewing court cannot set aside such a verdict. It is only when the record clearly shows a serious mistake or a misapprehension so violent as to shock the senses that the judgment will be reversed as being against the manifest weight of the evidence. As we view the record, a rather weak case was established by the plaintiff, especially when the slight nature of the impact of the vehicles and plaintiff's prior arthritic condition are considered.

It follows that the court did not err in overruling plaintiff's motion for a new trial and for judgment notwithstanding the verdict, as claimed in the seventh assignment of error. We find no error in the record prejudicial to the rights of the plaintiff, and, therefore, the judgment must be, and hereby is, affirmed.

*Judgment affirmed.*

BROWN, J., concurs.
CARLISLE, J., not participating.